| iKNOLL, Judge,
dissenting.
For the following reasons, I respectfully dissent.
The record evidence in this medical malpractice case by a dentist, Dr. Dupuis, is overwhelming of his gross deviation from the standard of care he owed to his patient, Mrs. Pickney, and this negligence was the sole cause of her death. Dr. Dupuis is a dentist with medical training, yet he did nothing and let his patient slip into brain death. He admitted that he was “baffled,” yet he had just given Mrs. Pickney an injection of mepi-vacaine, four penicillin tablets, and two pro-benecid tablets. Within minutes of receiving this medication, Mrs. Pickney got out of the dental chair and was yelling, “I’m having a reaction.” She told Dr. Dupuis what was wrong. Dr. Dupuis panicked and failed to recognize that his patient was having an anaphylactic reaction to the medication he had just given her. Dr. Dupuis acted like a layman instead of a trained dentist. The record shows that he did nothing he was trained to do as a doctor in general dentistry to counter an anaphylactic reaction. The jury found this conduct was not below the standard of care Dr. Dupuis owed to Mrs. Pickney. This 12is manifest error, and in my view, it is a miscarriage of justice for this court to approve of such a gross deviation from the standard of care owed by a dentist. The majority in essence is saying that if a dentist does nothing and this nonfeasance injures or kills a patient, then he is not negligent and has not committed malpractice. This is clear error. The jurisprudence is full of cases in which doctors are held accountable to their patients in medical malpractice for far less of a deviation from the standard of care than the gross deviation from this duty by Dr. Dupuis.
In essence, the defense postures that since Dr. Dupuis is not a “medical” doctor, his nonfeasance was not a breach because Dr. Dupuis is a dentist. This argument is the same as saying that dentists, although doctors with medical training, are not held accountable for emergencies in their offices from medicines they give their patients in treatment. This is to view dentists as teeth mechanics rather than doctors with medical training, and is a degradation to the dental' profession.
The record evidence that I rely upon to show manifest error by the jury is the following:
Dr. St. Clergy testified that she thought that Mrs. Pickney had some kind of cardiac event, not an anaphylactic reaction to penicillin. She also testified that if she did have an anaphylactic reaction, it was to the injection of mepivacaine and not to penicillin, because the four penicillin tablets were administered orally. She further testified that she would defer her opinion to the pathologist. Dr. St. Clergy is an emergency room physician, not a specialist in the field of allergies. Furthermore, Dr. James Freeman, the pathologist who performed the autopsy, found, “The heart was clean, the vessels showed no evidence of clotting or like of pulmonary embo-lus or anything else.” Dr. Freeman, an ex *725 pert in the fields of general medicine, anatomical pathology, clinical pathology, and forensic pathology, testified in person and clearly opined that Mrs. Pickney died as a result of an anaphylactic reaction to penicillin. This opinion was not rebutted. Dr. Sylvan Manuel, the coroner for St. Landry Parish, testified in person. He was strong and clear in his opinion that Mrs. Pickney died from anaphylactic reaction to penicillin, and put this on her death certificate.
The testimony of Dr. Gerald Chachere is very significant because he practices dentistry in Opelousas, was a member of the medical review panel which gave Dr. Dupuis a favorable | afín ding (plaintiffs did not submit any evidence to the medical review panel), and was a good friend of Dr. Dupuis, having known him since high school days and was one year behind him in dental school. Dr. Chachere was called by the defendant to testify. After he testified for the defendant, he examined plaintiffs’ evidence and changed his opinion, finding that Dr. Dupuis deviated from the standard of care owed to Mrs. Pickney by failing to recognize that she was having an anaphylactic reaction and by failing to administer epinephrine.
Dr. Guy Doll, who practices general dentistry in Lafayette, was accepted as an expert in general dentistry. He was a member of the peer review committee of the Aeadiana District Dental Association for five years and served as its chairman for four years. He found that Dr. Dupuis deviated from the standard of care owed to Mrs. Pickney for the same reasons as did Dr. Chachere.
The testimony of Mr. Glen Broussard, the paramedic employed by Acadian Ambulance, is very important. He worked on Mrs. Pick-ney in Dr. Dupuis’ office. He testified that her throat was swollen and he could not put an airway in (intubate her) so he used an esophageal obturator airway. He testified that he thought Mrs. Pickney had an anaphy-lactic reaction based on what Dr. Dupuis told him.
Dr. Dupuis’ dental assistants testified about the different symptoms Mrs. Pickney was exhibiting, i.e., slow, deep breathing, fluid from her mouth, sweating, shaking, expelling gas, swollen; in the beginning, she was rubbing her arms. Andrea Lastrapes took out Dr. Dupuis’ emergency kit which contained epinephrine, but he did not use it. Mrs. Pickney was not injected with epinephrine until 40-45 minutes later by Glen Brous-sard, a technician who did not have half the medical training Dr. Dupuis had, but even he knew what to do. Even Dr. St. Clergy testified that if Mrs. Pickney had a shot of epinephrine sooner, it could have made a difference. The Malamed Handbook mentioned in the majority opinion also states:
“In particularly severe [anaphylactic] reactions, respiratory and cardiovascular symptoms may be the only signs present.... With prompt and appropriate [epinephrine] therapy, the entire reaction may be terminated rapidly....”
The record shows that all of the doctors who testified found that Dr. Dupuis deviated from the standard of care by not having an oxygen bottle in his office. Dr. Dupuis also did not 14have a blood pressure cuff for obese patients, so he could not take Mrs. Piekney’s blood pressure. He testified that he could tell her blood pressure by taking her pulse.
All the doctors testified that Dr. Dupuis deviated from the standard of care by failing to keep proper records. He did not fill in Mrs. Pickney’s chart until after her brain death.
After reviewing the record, it is an inescapable conclusion that Dr. Dupuis committed medical malpractice that resulted in the death of Mrs. Pickney. Drs. Freeman, Manuel, Chachere, and Doll all opined that Dr. Dupuis’ failure to recognize an anaphylactic reaction and failure to administer epinephrine was below the standard of care in the community. The opinions of Drs. St. Clergy and Aswell that Mrs. Pickney died of a cardiac event were clearly proven incorrect. Dr. St. Clergy would yield to the pathologist. Drs. Duos and Robert opined that Dr. Du-puis did not act below the community standard of care. The remaining record evidence all supports the plaintiffs’ position.
Clearly the jury committed manifest error and I would reverse this erroneous verdict.